SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

SOUTHERN CALIFORNIA
LAWYERS GROUP, PC
Eric C. Morris (SBN 243425)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 466-4400
Facsimile: (909) 839-5004

Attorneys for PLAINTIFF
MARLON JOHNSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MARLON JOHNSON, an individual;<br><br>PLAINTIFF,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT; SHERIFF JOHN MCMAHON; DEPUTY ALEJANDRO RAMOS; DEPUTY MATTHEW BALTIERRA; DEPUTIES DOES 1 through 5; and DOES 6 through 10, inclusive,<br><br>DEFENDANTS. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1.  **VIOLATION OF THE FOURTH AMENDMENT, UNREASONABLE SEARCH AND SEIZURE, DETENTION AND ARREST (42 U.S.C. §1983)**<br>2.  **VIOLATION OF THE FOURTH AMENDMENT, EXCESSIVE FORCE (42 U.S.C. §1983)**<br>3.  **VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. §1983)**<br>4.  **42 U.S.C. §1983 – MONELL CLAIM**<br>5.  **VIOLATION OF THE BANE ACT CALIFORNIA CIVIL CODE SECTION 52.1**<br>6.  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>7.  **ASSAULT AND BATTERY**<br>8.  **FALSE ARREST/FALSE IMPRISONMENT**<br><br>**JURY DEMAND** |

PLAINTIFF MARLON JOHNSON ("PLAINTIFF") alleges as follows:

1. NATURE OF THE ACTION. This is a civil rights action to remedy violations of PLAINTIFF'S First and Fourth Amendment rights by the COUNTY OF SAN BERNARDINO, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, SHERIFF JOHN MCMAHON, DEPUTY ALEJANDRO RAMOS, DEPUTY MATTHEW BALTIERRA, DEPUTIES DOES 1 through 5; and DOES 6 through 10, inclusive, (collectively, "DEFENDANTS").

2. These DEFENDANTS are sued in their own right for a COUNTY and/or SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT (SBSD) policy, practice or custom that caused PLAINTIFF'S injuries in violation of one or more federal constitutional guarantees under 42 U.S.C. § 1983. The San Bernardino District Attorney's Office stated that the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT fosters a Culture of Violence perpetrated by a Code of Silence. During his closing argument in the criminal prosecution of three San Bernardino County Sheriff's Department deputy sheriff's, veteran prosecutor San Bernardino County Deputy District Attorney Robert Bulloch told the jury the Sheriff's Department fosters a "*culture of violence*" perpetuated by a "*code of silence*," and that, "*We have to have the will to take on the machine of the San Bernardino County Sheriff's Department.*" *See People vs. Nick Downey*, San Bernardino Superior Court, Case No. FSB1503000; See also, See, "Prosecutor's Comments Spur Backlash by San Bernardino County Law Enforcement," San Bernardino Sun, March 30, 2017;   https://www.sbsun.com/2017/03/30/prosecutors-comments-spur-backlash-by-san-bernardino-county-law-enforcement/.

3. SBSD deputies have repeatedly subjected the PLAINTIFF in this action, and others, to detention, search, interrogation and physical violence simply because they took pictures or video from public streets. Videotaping is not a crime, it is a means of artistic expression. In public spaces, on public streets and from public sidewalks, no law bars San Bernardino residents and visitors from photographing or videotaping the world around them, from documenting their own lives or using their lenses to find the sublime in the commonplace. The San Bernardino County Sheriff's Department has taken a different, and erroneous, view of videotaping and photography, which is violative of California Penal Code §§ 148(g) and 69(b).[1]

---

[1] The allegations of this complaint are based on information and belief, unless otherwise specified.

4.      The California Legislature has brought clarity to this situation, making it clear that recording in a public place is not, in and of itself, a violation of the law. "The fact that a person takes a photograph or makes an audio or video recording of an executive officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place, he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a)." (Cal. Pen. Code § 69). "The fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a), nor does it constitute reasonable suspicion to detain the person or probable cause to arrest the person."  (Cal. Pen. Code §148(g).)

The right to gather, receive, record, and disseminate information is grounded in the Free Speech Clause of the First Amendment. This right is further grounded in the Petition Clause of the First Amendment (if the purpose of gathering, receiving, or recording the information is to use it to petition the government for redress of grievances), and the Free Press Clause of the First Amendment. The First Amendment guarantees the right to take photographs of and otherwise record law enforcement officers engaged in the public discharge of their duties and other matters or events exposed to public view. For convenience, the terms "photograph" and "photography" as used in this Complaint encompass all forms of recording matters or events, including but not limited to still photography and video recording. The public has a significant interest in monitoring and recording government officials, including The San Bernardino County Sheriff's Department and their agents, "who are granted substantial discretion that may be misused to deprive individuals of their liberties." *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011).

5.      The San Bernardino County Sheriff's Department and their agents routinely and consistently denies public access to basic information about its operations, including whether officers engaged in misconduct are disciplined in any way, thus shielding both the agency and individual officials from public accountability for abusive policies and practices. This civil rights lawsuit hopes to address these concerns.

**JURISDICTION AND VENUE**

6.     The Court has jurisdiction over the federal law claims pursuant to Title 28 U.S.C. §§ 1331 and 1343. The Court also has supplemental jurisdiction over the state law claims and over all DEFENDANTS.  PLAINTIFF brings this action pursuant to Title 42 U.S.C. §§ 1983, 1988 and the state law claims for relief and are within the supplemental jurisdiction of the Court, pursuant to Title 28 U.S.C. § 1367.

7.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

8.     This Court has the authority to grant damages, declaratory and injunctive relief, and any other appropriate relief pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

9.     PLAINTIFF is an individual and resident of the State of California, County of San Bernardino and is competent to bring this suit in this Court.

10.     DEFENDANT COUNTY OF SAN BERNARDINO ("COUNTY") is a political subdivision of the State of California.  DEFENDANT COUNTY is charged by law with the administration and operation of SBSD and charged with the employment, control, supervision, discipline, training and practices of its personnel and employees and with the formulation of its policies, practices, and customs of its personnel and its employees.   DEFENDANT COUNTY is a public entity organized and existing under the laws of the State of California. These DEFENDANTS are sued in their own right for a COUNTY and/or SBSD policy, practice or custom that caused PLAINTIFF'S injuries in violation of one or more federal constitutional guarantees under 42 U.S.C. § 1983.

11.     DEFENDANT SAN BERNARDINO COUNTY SHERIFFS DEPARTMENT ("SBSD") is a COUNTY Department that provides law enforcement services within the COUNTY. SBSD is responsible for the assignment, training, supervision and discipline of Deputy Sheriff's. These DEFENDANTS are sued in their own right for a COUNTY and/or SBSD policy, practice or custom that caused PLAINTIFF'S injuries in violation of one or more federal constitutional guarantees under 42 U.S.C. § 1983.

12.     DEFENDANT Sheriff John McMahon (hereafter "McMahon") is the Sheriff of San Bernardino County, and is the policy maker for the SBSD. He is sued in his official and individual capacity. At all times relevant, as a COUNTY official, DEFENDANT McMahon acted under the color of law.

13.     All individual DEFENDANTS are named based on their personal involvement and/or supervisorial liability for their role in the constitutional deprivations alleged herein, including but not limited to their establishment, setting in motion, failing to terminate, ratification, implementation, institution, and/or execution of the wrongful actions, policies, practices and customs and/or failure to adequately train or supervise SBSD personnel who have engaged in the conduct alleged herein. PLAINTIFF is informed and believes and thereon alleges that DEFENDANT DEPUTY RAMOS ("RAMOS") is an individual and resident of the State of California, County of San Bernardino. DEPUTY RAMOS is a Deputy Sheriff at all times material herein was, a duly appointed deputy and agent of DEFENDANTS, SBSD and the COUNTY, acting within the scope of his employment with SBSD and the COUNTY and under color of state law. DEPUTY RAMOS is sued in his individual capacity.

14.     PLAINTIFF is informed and believes and thereon alleges that DEFENDANT DEPUTY BALTIERRA ("BALTIERRA") is an individual and resident of the State of California, County of San Bernardino. DEPUTY BALTIERRA is a Deputy Sheriff at all times material herein was, a duly appointed deputy and agent of DEFENDANTS, SBSD and the COUNTY, acting within the scope of his employment with SBSD and the COUNTY and under color of state law. DEPUTY BALTIERRA is sued in his individual capacity.

15.     PLAINTIFF is informed and believes and thereon alleges that DEFENDANT DEPUTIES DOES 1 through 5 are individuals and residents of the State of California, County of San Bernardino.

16.     On January 22, 2018, DEPUTIES RAMOS, BALTIERRA and DOES 1 through 5 were employees of the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and were acting within the purpose and scope of their employment.

17.     PLAINTIFF is informed and believes, and thereupon alleges that, at all times relevant herein, the individual DEFENDANTS, and each of them, were the agents, servants and employees of their respective employers (DEFENDANT COUNTY) and were acting at all times within the scope of

their agency and said employment with the knowledge and consent of their principals and employers. At all times herein, DEFENDANTS, and each of them, were acting under the color of state law.

18.     The true names and capacities of DEPUTIES DOES 1 through 5 and DOES 6 through 10, inclusive, are unknown to PLAINTIFF at this time who, therefore, sues these DEFENDANTS by such fictitious names. DOE DEFENDANTS include the supervisors at SBSD and COUNTY who directly approved the acts, policies and training described herein, as well as agents, officers, and employees of SBSD and COUNTY who are liable in connection with one or more of the claims sued upon here and are responsible in some manner for   the wrongful acts and conduct alleged herein. PLAINTIFF will amend this Complaint to show DOE DEFENDANTS' true names and capacities when they have been ascertained. PLAINTIFF is informed and believes, and herein alleges, that such DOE DEFENDANTS are residents of California.

19.     PLAINTIFF is informed and believes and thereon alleges that at all times relevant DEFENDANTS DOES 6 through 10 are COUNTY employees, and in doing the things herein alleged ,DEFENDANTS DOES 6 through 10 acted within the course and scope of their employment.

20.     This action is brought under Title U.S.C. § 1983 and on the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, and pursuant to the general law of the United States and of the State of California. PLAINTIFF also alleges that the conduct of each DEFENDANT deprived PLAINTIFF of his constitutional right to due process under the law, and caused PLAINTIFF to suffer grievous pain, suffering, anxiety, depression, harm and injury based on the excessive force applied against him and the wrongful actions of the San Bernardino County Sheriff's Department.

21.     Each of the DEFENDANTS and DOE DEFENDANTS caused and is responsible for the unlawful conduct and resulting injury by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing, acquiescing in or failing to take action to prevent the unlawful conduct by intervention, or promulgating policies and procedures or practices pursuant to which the unlawful conduct occurred; by failing and refusing to initiate and maintain adequate training, supervision, policies, procedures and protocols; by failing to implement and ensure compliance with policies and procedures to ensure the safety and reasonable security of individuals, such as PLAINTIFF; and by ratifying the unlawful conduct performed by agents, employees, counselors, staff and officers under their direction and control.

22.     Whenever and wherever reference is made in this Complaint to any act by a DEFENDANT, such allegation and reference will also be deemed to mean the acts and failures to act of each DEFENDANT individually, jointly or severally.

### GENERAL ALLEGATIONS

23.     On January 22, 2018, PLAINTIFF was arrested for a crime he did not commit. The charges were later completely dismissed by the court on the 4th day of a jury trial.

24.     On the morning of January 22, 2018, while driving his nine-year-old daughter to school, Christopher Crowell ("Crowell") noticed a police vehicle stopped in the roadway.  Crowell drove up to the rear of the vehicle and waited for it to proceed.  When the vehicle failed to move forward, Crowell drove around the vehicle.

25.     DEFENDANT DEPUTY RAMOS was driving the police vehicle.  Angered that Crowell drove around his vehicle, DEPUTY RAMOS pulled Crowell over.  Crowell was on parole at this time. DEPUTY RAMOS determined that Crowell's registration had expired, and arrested him on charges of obstruction and resisting arrest.  RAMOS advised Crowell that his car was going to be towed.

26.     Crowell telephoned his work supervisor and friend, PLAINTIFF JOHNSON, and told him that he was being arrested, that his car was being towed and requested that PLAINTIFF pick up his daughter as she was extremely distraught as to what was occurring with her father and DEPUTY RAMOS.

27.     PLAINTIFF arrived shortly thereafter and saw DEPUTY RAMOS handcuffing Crowell and placing him in the patrol vehicle.

28.     PLAINTIFF parked across the street, approximately 200 to 300 feet from the scene of Crowell's arrest.  PLAINTIFF could hear Crowell's daughter screaming hysterically.  Crowell yelled at PLAINTIFF to get his daughter.

29.     Instead of approaching DEPUTY RAMOS, PLAINTIFF shouted the question whether he could take Crowell's daughter.  DEPUTY RAMOS did not respond to PLAINTIFF the first time, so PLAINTIFF shouted the same question two more times.

30.     DEPUTY RAMOS responded in the negative and told PLAINTIFF to leave.

31.     PLAINTIFF responded by asking why he had to leave since he was 200 or 300 feet away on the other side of the street. DEPUTY RAMOS responded that he would arrest PLAINTIFF for obstruction if PLAINTIFF did not leave.

32.     PLAINTIFF shouted the question how he could obstruct justice when he was 200 or 300 feet away. PLAINTIFF then proceeded to walk to his vehicle.

33.     At that point, PLAINTIFF began to video record the incident with the cellphone in his left hand, while his right hand was in his jacket pocket. (It was a cool January morning.)

34.     At the same time, DEPUTY RAMOS started walking across the street towards PLAINTIFF and started to scream at PLAINTIFF stating he was going to jail for obstruction.

35.     As DEPUTY RAMOS got close to PLAINTIFF, PLAINTIFF again asked how he was obstructing if he was walking towards his vehicle.

36.     RAMOS instructed PLAINTIFF to stop videotaping. RAMOS yelled at PLAINTIFF that he is obstructing justice. And that he was going to arrest him. There was no probable cause to detain or arrest PLAINTIFF at this point.

37.     RAMOS grabbed PLAINTIFF'S cell phone and threw it on the ground.

38.     DEPUTY BALTIERRA was now on the scene. RAMOS grabbed PLAINTIFF and placed him in a headlock while BALTIERRA tackled him and slammed his face on the ground. Deputies J. Garcia and S. Evans were also on scene. Deputies Garcia, Evans, RAMOS and BALTIERRA all jumped on top of PLAINTIFF.

39.     PLAINTIFF was on the ground as the Deputies all piled upon him.

40.     RAMOS kicked PLAINTIFF multiple times in the face, back, and torso. RAMOS then used his Retractable Collapsible Baton (RCB) to hit PLAINTIFF multiple times on the back, neck and jaw causing permanent, great bodily injury. DEPUTY RAMOS then shoved the RCB into PLAINTIFF'S jawbone causing excruciating pain and causing permanent damage to his jaw. While PLAINTIFF was on the ground, DEPUTIES RAMOS, BALTIERRA and DOES 1 through 5 proceeded to kick PLAINTIFF in the head and neck area.

41.     BALTIERRA kicked and kneed PLAINTIFF in the left lower back area.

42.     All DEPUTIES were yelling at PLAINTIFF saying he was resisting arrest, although he was not resisting arrest. The incident was captured on videotape.

43.     The DEPUTIES yelled for PLAINTIFF to remove his right hand from the jacket, because the hand was still in the pocket after PLAINTIFF was forced to the ground.  PLAINTIFF was unable to move his right arm because DEPUTY RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 had a firm grip on PLAINTIFF'S right arm and were piled on top of him.

44.     PLAINTIFF asked the DEPUTIES to loosen their grip so that he could remove his right hand from his jacket pocket.

45.     The DEPUTIES loosened their grip and PLAINTIFF attempted to remove his right hand from his jacket pocket.

46.     At that point, DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 kicked and punched PLAINTIFF and yelled that PLAINTIFF was resisting arrest because he was trying to remove his right hand from his jacket pocket as the DEPUTIES instructed.

47.     PLAINTIFF suffered injuries to his head, face, neck, shoulder, arm, and knee.

48.     BALTIERRA escorted PLAINTIFF to his patrol car.  BALTIERRA smashed PLAINTIFF'S body against the patrol car door while placing him in the back seat of his car.

49.     PLAINTIFF was transported to High Desert Detention Center and booked for resisting arrest.

50.     PLAINTIFF was held in custody for two days before being arraigned on January 24, 2018.

51.     DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 gave false testimony at PLAINTIFF'S preliminary hearing, causing PLAINTIFF to be held on $25,000 bail.

52.     On the 4th day of trial, February 26, 2018, the court granted PLAINTIFF'S *Penal Code* 1118.1 motion, at which time all charges against PLAINTIFF were dismissed.

53.     DEPUTY RAMOS violated PLAINTIFF'S First Amendment rights by directing him to cease taking video and taking photographs of matters and events exposed to public view in outdoor areas

54.     As enforced, DEPUTY RAMOS the SBSD Policy regarding photography unconstitutionally prevents PLAINTIFF from freely exercising his First Amendment rights to photograph and record matters and events exposed to public view from exterior or outdoor areas. PLAINTIFF'S case is not unique. SBSD officers and their agents frequently deter or prevent individuals

from documenting potential misconduct by SBSD Deputies and other matters of public interest, and destroy photo or video evidence of the same.

55.    Both the public sidewalk where PLAINTIFF was standing and the surrounding areas are public forums open to speech and expressive activity by tradition and past usage.

56.    While taking these photographs, PLAINTIFF was not engaged in any form of commercial speech or activity. PLAINTIFF took these photographs for political and/or other non-commercial purposes.

57.    Throughout this encounter, DEPUTIES RAMOS, BALTIERRA and other SBSD DOE DEPUTIES spoke to PLAINTIFF in an aggressive and threatening manner, despite the fact that PLAINTIFF at no point posed a threat to the safety of the officers and at no point actively resisted arrest.

58.    Furthermore, PLAINTIFF committed no crime and took no actions giving rise to a reasonable suspicion or probable cause that he had committed or was about to commit a crime under any law that could constitutionally have been applied to him. To the extent PLAINTIFF may have violated any law making his photography illegal, that law is unconstitutional as applied to him.

59.    At all relevant times, there was no threat of violence by PLAINTIFF and there was no threat of property destruction by PLAINTIFF.

## PRESENTATION OF WRITTEN CLAIM

60.    On May 21, 2018, in compliance with California *Government Code* section 905, PLAINTIFF presented to the COUNTY a written claim for damages arising out of his arrest on January 22, 2018, prosecution, and incarceration.  On June 5, 2018, the COUNTY rejected PLAINTIFF'S claim.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE FOURTH AMENDMENT, UNREASONABLE SEARCH AND SEIZURE, DETENTION AND ARREST (42 U.S.C. §1983)

### (AGAINST DEFENDANT DEPUTIES RAMOS and BALTIERRA, DOES 1-10)

61.    PLAINTIFF incorporates by reference the allegations of the foregoing paragraphs above as though replead herein.

62.    DEPUTIES RAMOS and BALTIERRA, DOES 1-10 (collectively, "DEFENDANT DEPUTIES") and each of them, acting under the color of state law, deprived PLAINTIFF of rights, privileges, and immunities secured by the Constitution and laws of the United States including the First,

Fourth, Fifth, Eighth and Fourteenth Amendments by subjecting PLAINTIFF to unreasonable search and seizure, detention and arrest and unjustified infliction of harm. At approximately 8:00 a.m. on January 22, 2018, DEPUTY RAMOS threatened to arrest PLAINTIFF for obstruction if he failed to leave the scene of Crowell's arrest.

63.     PLAINTIFF asked how he could be interfering with the arrest if he was on the other side of the street and 200 to 300 feet away. PLAINTIFF then turned and walked towards his vehicle.

64.     DEPUTY RAMOS responded by storming across the street, grabbing PLAINTIFF'S cell phone and throwing it on the ground, and putting PLAINTIFF in a head lock. DEPUTIES RAMOS AND BALTIERRA and DOES 1 through 5 (who had just arrived) gang tackled PLAINTIFF and slammed PLAINTIFF'S face into the pavement.

65.     All the DEPUTIES yelled for PLAINTIFF to remove his right hand from his jacket pocket. PLAINTIFF was unable to move his right arm because DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 had a firm grip on PLAINTIFF's right arm.

66.     While PLAINTIFF was on the ground, DEPUTIES RAMOS, BALTIETTA and DOES 1 through 5 kicked and kneed him. RAMOS shoved a baton or RCB into PLAINTIFF'S jawbone causing excruciating pain and causing permanent damage to his jaw. While PLAINTIFF was on the ground, DEPUTIES RAMOS, BALTIERRA and DOES 1 through 5 proceed to kick PLAINTIFF in the head, face, back, knee, shoulder and neck area.

67.     The DEPUTIES and/or DEFENDANTS involved in the incident of January 22, 2018 acted under color of law and used excessive and or unreasonable physical force on the PLAINTIFF in violation of the Fourth Amendment

68.     DEFENDANTS' actions described above violated PLAINTIFF'S rights under the Fourth Amendment to the United States Constitution by subjecting PLAINTIFF to unreasonable warrantless searches and seizures.

69.     When DEPUTIES RAMOS and BALTIERRA, DOES 1-10 (collectively, "DEFENDANT DEPUTIES") beat PLAINTIFF and placed him in handcuffs, they violated PLAINTIFF'S right to be secure in his person against unreasonable searches and seizures as guaranteed to the PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

70.     DEFENDANT DEPUTIES detained PLAINTIFF without reasonable suspicion and arrested him without probable cause.

71.     The conduct of DEFENDANT DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT DEPUTIES.

72.     As a result of their misconduct, DEFENDANT DEPUTIES are liable for PLAINTIFF'S injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

73.     The violation of PLAINTIFF'S Fourth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by SBSD and the COUNTY, of having SBSD officers detain, search, and interrogate photographers who photograph in public places where photography is legal and where DEPUTIES have no reasonable basis to believe the photographer is engaged in any criminal activity or is armed or dangerous.

74.     DEFENDANTS' conduct violated clearly established constitutional or other rights, of which DEFENDANTS knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. §1983.The actions of the DEFENDANTS were done with intent to deprive PLAINTIFF of his right to be free from unreasonable use of force, and with intent to unlawfully harm PLAINTIFF.

75.     PLAINTIFF Johnson suffered emotional and physical injury and harm as a result of the unconstitutional use of force.

76.     As a direct and proximate result of the unlawful actions of these DEFENDANTS, PLAINTIFF has suffered severe emotional and economic harm.

77.     PLAINTIFF intends to continue photographing, but fears further detention and harassment by the SBSD. That fear prevents him from photographing as much as he would like or in places he would like.

78.     PLAINTIFF is entitled to recover reasonable attorney fees under 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE FOURTH AMENDMENT, EXCESSIVE FORCE (42 U.S.C. §1983)

### (AGAINST DEFENDANT DEPUTIES RAMOS and BALTIERRA, DOES 1-10)

79.     PLAINTIFF incorporates by reference the allegations of the foregoing paragraphs above as though replead herein.

80.     When DEFENDANT DEPUTIES beat PLAINTIFF and placed him in handcuffs, as complained of herein, they violated PLAINTIFF'S right to be secure in his person against unreasonable searches and seizures as guaranteed to the PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

81.     DEPUTIES RAMOS and BALTIERRA, DOES 1-10 (collectively, "DEFENDANT DEPUTIES") and each of them, acting under the color of state law, deprived PLAINTIFF of rights, privileges, and immunities secured by the Constitution and laws of the United States including the First, Fourth, Fifth, Eighth and Fourteenth Amendments by subjecting PLAINTIFF to unreasonable search and seizure, detention and arrest and unjustified infliction of harm.

82.     At approximately 8:00 a.m. on January 22, 2018, DEPUTY RAMOS threatened to arrest PLAINTIFF for obstruction if he failed to leave the scene of Crowell's arrest.

83.     PLAINTIFF asked how he could be interfering with the arrest if he was on the other side of the street and 200 to 300 feet away.  PLAINTIFF then turned and walked towards his vehicle.

84.     DEPUTY RAMOS responded by storming across the street, grabbing PLAINTIFF'S cell phone and throwing it on the ground, and putting PLAINTIFF in a head lock.  DEPUTIES RAMOS AND BALTIERRA and DOES 1 through 5 (who had just arrived) gang tackled PLAINTIFF and slammed PLAINTIFF'S face into the pavement.

85.     All the DEPUTIES yelled for PLAINTIFF to remove his right hand from his jacket pocket.  PLAINTIFF was unable to move his right arm because DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 had a firm grip on PLAINTIFF's right arm.

86.     While PLAINTIFF was on the ground, DEPUTIES RAMOS, BALTIETTA and DOES 1 through 5 kicked and kneed him.  RAMOS shoved a baton or RCB into PLAINTIFF'S jawbone causing excruciating pain and causing permanent damage to his jaw. While PLAINTIFF was on the ground,

1   DEPUTIES RAMOS, BALTIERRA and DOES 1 through 5 proceed to kick PLAINTIFF in the head,

2   face, back, knee, shoulder and neck area.

3        87.    DEFENDANT DEPUTIES detained PLAINTIFF without reasonable suspicion and

4   arrested him without probable cause.

5        88.    The conduct of DEFENDANT DEPUTIES was willful, wanton, malicious, and done with

6   reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of

7   exemplary and punitive damages as to Defendants DEFENDANT DEPUTIES.

8        89.    As a result of their misconduct, DEFENDANT DEPUTIES are liable for PLAINTIFF'S

9   injuries, either because they were integral participants in the wrongful detention and arrest, or because

10  they failed to intervene to prevent these violations.

11       **90.**   Plaintiffs also seek attorney fees under this claim.

12                      **THIRD CLAIM FOR RELIEF**

13       **VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)**

14     **(AGAINST DEFENDANT DEPUTIES RAMOS and BALTIERRA, DOES 1-10)**

15       91.    PLAINTIFF incorporates by reference the allegations of the foregoing paragraphs above

16  as though replead herein.

17       92.    DEPUTIES RAMOS and BALTIERRA, DEFENDANTS, DOES 1-10 and each of them,

18  acting under the color of state law, deprived PLAINTIFF of rights, privileges, and immunities secured

19  by the Constitution and laws of the United States including the First, Fourth, Fifth, Eighth and

20  Fourteenth Amendments by subjecting PLAINTIFF to excessive force, unjustified infliction of harm and

21  other wrongful acts for videotaping the events surrounding Crowell's arrest.

22       93.    DEFENDANTS' actions described herein violated PLAINTIFF'S rights under the First

23  Amendment to the United States Constitution by prohibiting PLAINTIFF from exercising his

24  constitutional right to free speech and expression, as well as freedom of the press, and by retaliating

25  against PLAINTIFF for attempting to exercise those same rights.

26       94.    At approximately 8:00 a.m. on January 22, 2018, DEPUTY RAMOS threatened to arrest

27  PLAINTIFF for obstruction if he failed to leave the scene and stop videotaping Crowell's arrest.

28       95.    PLAINTIFF asked how he could be interfering with the arrest if he was on the other side

of the street and 200 to 300 feet away.  PLAINTIFF then turned and walked towards his vehicle.

96.     At that point, PLAINTIFF began to video record the incident with the cellphone in his left hand, while his right hand was in his jacket pocket. (It was a cool January morning.)

97.     At the same time, DEPUTY RAMOS started walking across the street towards PLAINTIFF and started to scream at PLAINTIFF stating he was going to jail for obstruction.

98.     As DEPUTY RAMOS got close to PLAINTIFF, PLAINTIFF again asked how he was obstructing if he was walking towards his vehicle.

99.     RAMOS instructed PLAINTIFF to stop videotaping. RAMOS yelled at PLAINTIFF that he is obstructing justice. And that he was going to arrest him. There was no probable cause to detain or arrest PLAINTIFF at this point.

100.    DEPUTY RAMOS responded by storming across the street, grabbing PLAINTIFF'S cell phone and throwing it on the ground, and putting PLAINTIFF in a head lock. DEPUTIES RAMOS and BALTIERRA and DOES 1 through 5 (who had just arrived) gang tackled PLAINTIFF and slammed PLAINTIFF'S face into the pavement.

101.    All the DEPUTIES yelled for PLAINTIFF to remove his right hand from his jacket pocket. PLAINTIFF was unable to move his right arm because DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 had a firm grip on PLAINTIFF's right arm.

102.    While PLAINTIFF was on the ground, DEPUTIES RAMOS, BALTIETTA and DOES 1 through 5 kicked and kneed him. RAMOS shoved a baton or RCB into PLAINTIFF'S jawbone causing excruciating pain and causing permanent damage to his jaw. While PLAINTIFF was on the ground, DEPUTIES RAMOS, BALTIERRA and DOES 1 through 5 proceed to kick PLAINTIFF in the head, face, back, knee, shoulder and neck area.

103.    The violation of PLAINTIFF'S First Amendment rights occurred pursuant to a policy, custom, or practice, maintained by SBSD and the COUNTY, of having SBSD officers prohibit photographers from photographing in public places where photography is lawful, and of retaliating against photographers who exercise their First Amendment rights to photograph in such places by detaining, searching, and interrogating them.

104.    DEFENDANTS' conduct violated clearly established constitutional or other rights, of which DEFENDANTS knew, or of which reasonable public officials should have known, rendering DEFENDANTS liable to PLAINTIFF under 42 U.S.C. § 1983.

105.    As a direct and proximate result of the unlawful actions of these DEFENDANTS, PLAINTIFF has suffered significant emotional and economic harm.

106.    As a direct and proximate result of the aforementioned wrongful acts of DEFENDANTS, PLAINTIFF was injured as set forth above, and is entitled to compensatory and punitive damages according to proof.

107.    PLAINTIFF intends to continue photographing in public, but fears further detention and harassment by the SBSD. That fear prevents him from photographing as much as he would like or in places he would like.

108.    PLAINTIFF is entitled to recover reasonable attorney fees under 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – *MONELL CLAIM*

### (AGAINST DEFENDANTS MCMAHON IN HIS OFFICIAL CAPACITY, COUNTY OF SAN BERNARDINO, AND DOES 6-10)

109.    The allegations contained in all antecedent and subsequent paragraphs are hereby incorporated by reference, and specifically, the allegations establishing an unconstitutional custom, policy and practice, within the meaning of *Monell v. Department of Social Services of the County of New York*, 436 U.S. 658 (1978)("Monell"), as set forth in all relevant paragraphs of the Complaint.

110.    PLAINTIFF is informed and believes, and thereon alleges, that, at all times herein mentioned, DEFENDANTS County of San Bernardino, McMahon and DOES 6-10, who was at the time of the incident the final policy maker(s) for the SBSD, with deliberate indifference, an conscious and reckless disregard to the safety, security and constitutional and statutory rights of PLAINTIFF, engaged in the unconstitutional conduct and omissions specifically elaborated in the complaint, and the specific *Monell* violations discussed in this Complaint .

111.    The actions and inactions of the DEFENDANTS set forth were known to the policy maker responsible for the SBSD, including DEFENDANTS McMahon, and DOES 6-10, and the County of San Bernardino, acted with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of falling to training, supervise or discipline in areas where the need for such training and supervision

was obvious, and failing to ensure that the constitutional needs and equal protection rights of Citizens were protected as required by law.

112.    The actions of DEFENDANTS County of San Bernardino, DEFENDANT McMahon and DOES 6-10, as set forth herein, were a motivating force behind the violations of PLAINTIFF'S constitutional rights as set forth in the complaint. Specifically, their actions, and policies, customs and practices including, but not limited to, in hiring, training, discipline, provision of facilities, accommodation of disabilities, resulting in the use of excessive force, retaliation against the exercise of First Amendment rights, discrimination against Citizens, and excessive force against citizens, all were the moving force of the violations by the DEFENDANTS against PLAINTIFF.

113.    On information and belief, DEFENDANT DEPUTIES' unjustified beating and other wrongful acts against PLAINTIFF was found to be within SBSD policy.

114.    On information and belief, DEFENDANT DEPUTIES' unjustified beating and other wrongful acts against PLAINTIFF was ratified by SBSD supervisorial officers.

115.    On information and belief, DEFENDANT DEPUTIES were not disciplined for the unjustified beating and other wrongful acts against PLAINTIFF.

116.    On and for some time prior to January 2018 (and continuing to the present date), Defendants COUNTY, MCMAHON and DOES 6-10, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of PLAINTIFF, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

      a.  employing and retaining as police officers and other personnel, including DOE DEPUTIES, whom Defendants COUNTY, MCMAHON and DOES 6-10 at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written SBSD policies, including the use of excessive force;

      b.  inadequately supervising, training, controlling, assigning, and disciplining COUNTY sheriff's deputies and other personnel, including DEFENDANT DEPUTIES, whom Defendants COUNTY, MCMAHON and DOES 6-10 knew or in the exercise of

reasonable care should have known had the aforementioned propensities and character

traits, including the propensity for violence and the use of excessive force;

c.  maintaining grossly inadequate procedures for reporting, supervising, investigating,

reviewing, disciplining and controlling the intentional misconduct by DEFENDANT

DEPUTIES, who are sheriff's deputies and/or agents of COUNTY;

d.  failing to discipline COUNTY sheriff's deputies' and/or agents' conduct, including but

not limited to, unlawful detention and excessive force;

e.  ratifying the intentional misconduct of DEFENDANT DEPUTIES and other sheriff's

deputies and/ or agents, who are sheriff's deputies and/or agents of COUNTY;

f.  having and maintaining an unconstitutional policy, custom, and practice of detaining and

arresting individuals without probable cause or reasonable suspicion, and using excessive

force, including deadly force, which also is demonstrated by inadequate training

regarding these subjects. The policies, customs, and practices of Defendants COUNTY

MCMAHON and DOES 6-10 were maintained with a deliberate indifference to

individuals' safety and rights; and

g.  failing to properly investigate claims of unlawful detention and excessive force by

COUNTY sheriff's deputies.

117.   The aforementioned unconstitutional customs, practices, and polices, in addition to the

ratification of the deficient customs, practices, and policies, are evidenced by the number of prior civil

cases in which a jury has found force used by a sheriff's deputy working for the San Bernardino County

Sheriff's Department to be excessive and unreasonable.

118.   By reason of the aforementioned policies and practices of Defendants COUNTY,

MCMAHON and DOES 6-10,   PLAINTIFF was severely injured and subjected to pain and suffering.

119.   Defendants COUNTY, MCMAHON and DOES 6-10, together with various other

officials, whether named or unnamed, had either actual or constructive knowledge of the deficient

policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated

above, these defendants condoned, tolerated and through actions and inactions thereby ratified such

policies. Said defendants also acted with deliberate indifference to the foreseeable effects and

1   consequences of these policies with respect to the constitutional rights of PLAINTIFF and other
2   individuals similarly situated.

3       120.   By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other
4   wrongful acts, DEFENDANTS acted with intentional, reckless, and callous disregard for the life of
5   PLAINTIFF and for PLAINTIFF'S constitutional rights. Furthermore, the policies, practices, and
6   customs implemented, maintained, and still tolerated by Defendants COUNTY, MCMAHON and DOES
7   6-10 were affirmatively linked to and were a significantly influential force behind the injuries of
8   PLAINTIFF.

9       121.   As a direct and proximate result of the aforementioned acts of DEFENDANTS,
10  PLAINTIFF was injured as set forth above, and is entitled to compensatory damages according to proof.

11      122.   The actions of each of Defendants were willful, wanton, oppressive, malicious,
12  fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and
13  therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS.

14      123.   Accordingly, Defendants COUNTY, MCMAHON and DOES 6-10 each are liable to
15  Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

16      124.   Plaintiffs also seek attorney's fees under this claim.

17  **FIFTH CLAIM FOR RELIEF**

18  **VIOLATION OF THE BANE ACT CALIFORNIA CIVIL CODE SECTION 52.1**
19  **(AGAINST ALL DEFENDANTS)**

20      125.   PLAINTIFF repeats and re-alleges the foregoing Paragraphs as if expressly set forth at
21  length.

22      126.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering
23  with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or
24  coercion.

25      127.   Conduct that violates the Fourth Amendment violates the California Bane Act.
26  DEPUTIES RAMOS and BALTIERRA, DOES 1-10 and each of them, acting under the color of state
27  law, deprived PLAINTIFF of rights, privileges, and immunities secured by the Constitution and laws of
28  the United States including the First, Fourth, Fifth, Eighth and Fourteenth Amendments by subjecting

PLAINTIFF to a beating, to excessive force, unjustified infliction of harm and other wrongful acts for videotaping the events surrounding Crowell's arrest.

128.   DEFENDANT DEPUTIES' actions thus deprived PLAINTIFF of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

129.   DEFENDANT DEPUTIES, while working as law enforcement for the SBSD and COUNTY, and acting within the course and scope of their duties, interfered with or attempted to interfere with the rights of PLAINTIFF to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.

130.   In January 22, 2018, PLAINTIFF arrived at the scene to retrieve Crowell's daughter who was hysterical in the back of Crowell's vehicle.  DEFENDANT DEPUTIES sought to interfere with PLAINTIFF'S right to enjoyment of liberty through intimidation when the DEFENDANT DEPUTIES threaten him for standing on a street corner 200-300 feet away, where he lawfully asked RAMOS if he could retrieve the crying child in the back of Crowell's vehicle which resulted in RAMOS AND BALIERRA beating PLAINTIFF causing permanent injury, arresting him, charging him with a crime, and causing PLAINTIFF  to have to pay bail, and commit to a trial, before he was acquitted.

131.   On information and belief, PLAINTIFF reasonably believed that if he exercised his rights, including his civil rights, DEFENDANT DEPUTIES would commit acts involving violence, threats, coercion, or intimidation against him or his property.

132.   On information and belief, DEFENDANT DEPUTIES injured PLAINTIFF to prevent him from exercising his rights or retaliated against PLAINTIFF for having exercised his rights.

133.   PLAINTIFF was caused to suffer extreme pain and suffering, bodily injury, and suffered loss of earning capacity.

134.   The conduct of DEFENDANT DEPUTIES and was a substantial factor in causing the harms, losses, injuries, and damages of PLAINTIFF.

135.   The COUNTY is vicariously liable for the wrongful acts of DEFENDANT DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is

1   liable for the injuries caused by its employees within the scope of the employment if the employee's act

2   would subject him or her to liability.

3       136.   The conduct of DEFENDANT DEPUTIES was malicious, wanton, oppressive, and

4   accomplished with a conscious disregard for the rights of PLAINTIFF entitling PLAINTIFF to an award

5   of exemplary and punitive damages.

6       137.   DEFENDANTS' use of unreasonable and excessive force against PLAINTIFF, was

7   committed with intent to deprive him of his right to be free from unreasonable use of force under

8   Federal and California law.

9       138.   As a direct and proximate result of the above stated described illegal actions of

10   DEFENDANTS involved in the incident, including their use of excessive and unnecessary force,

11   PLAINTIFF sustained physical damage to his head, face, back, neck, shoulder, arm, and knee.

12   PLAINTIFF also sustained severe emotional distress, anguish of mind, fear, anxiety and inconvenience.

13   **SIXTH CAUSE OF ACTION**

14   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

15   **(AGAINST ALL DEFENDANTS)**

16       139.   The allegations contained in all antecedent and subsequent paragraphs are incorporated

17   by reference.

18       140.   The DEFENDANT, County of San Bernardino is liable for the violation of its employees

19   under California Government Code Section 815.2(a). Furthermore, the County of San Bernardino liable

20   under California Government Code Section 815.6.

21       141.   DEPUTY DEFENDANTS, acting with the scope of their employment as law

22   enforcement officers for the SBSD, intentionally inflicted emotional distress on PLAINTIFF.

23       142.   DEFENDANTS inflicted intentional emotional distress by committing acts that were

24   outrageous and violated his civil rights, including but not limited to, engaging in excessive force without

25   reason; retaliating, beating and arresting PLAINTIFF for exercising his constitutional rights of

26   videotaping the events surrounding the Crowell arrest; by failing to properly assess and treat

27   PLAINTIFF'S medical condition despite complaints related to his shoulder, jaw, back, leg and arm, and

28   knowing he was totally vulnerable, and dependent on them to provide adequate medical treatment; by

making false statements about the arrest events causing PLAINTIFF to be incarcerated, having to pay

money for bail; and for causing emotional and financial stress of going through a criminal trial based upon the DEPUTIES false statements, which came to light during the trial thus causing the court to dismiss all charges against PLAINTIFF on the 4th day of trial.

143.    As a direct and proximate result of the aforementioned acts of DEFENDANTS, PLAINTIFF was injured as set forth above, suffered extreme emotional distress and the worsening of his injuries, and is entitled to compensatory and punitive damages according to proof.

## SEVENTH CAUSE OF ACTION

## ASSAULT AND BATTERY

## (AGAINST ALL DEFENDANTS)

144.    The allegations contained in all antecedent and subsequent paragraphs are hereby incorporated by reference.

145.    On the morning of January 22, 2018, while driving his nine-year-old daughter to school, Christopher Crowell ("Crowell") noticed a police vehicle stopped in the roadway. Crowell drove up to the rear of the vehicle and waited for it to proceed. When the vehicle failed to move forward, Crowell drove around the vehicle.

146.    DEFENDANT DEPUTY RAMOS was driving the police vehicle. Angered that Crowell drove around his vehicle, DEPUTY RAMOS pulled Crowell over. Crowell was on parole at this time. DEPUTY RAMOS determined that Crowell's registration had expired, and arrested him on charges of obstruction and resisting arrest. RAMOS advised Crowell that his car was going to be towed.

147.    Crowell telephoned his work supervisor and friend, PLAINTIFF JOHNSON, and told him that he was being arrested, that his car was being towed and requested that PLAINTIFF pick up his daughter as she was extremely distraught as to what was occurring with her father and DEPUTY RAMOS.

148.    PLAINTIFF arrived shortly thereafter and saw DEPUTY RAMOS handcuffing Crowell and placing him in the patrol vehicle.

149.    PLAINTIFF parked across the street, approximately 200 to 300 feet from the scene of Crowell's arrest. PLAINTIFF could hear Crowell's daughter screaming hysterically. Crowell yelled at PLAINTIFF to get his daughter.

150.    Instead of approaching DEPUTY RAMOS, PLAINTIFF shouted the question whether he could take Crowell's daughter. DEPUTY RAMOS did not respond to PLAINTIFF the first time, so PLAINTIFF shouted the same question two more times.

151.    DEPUTY RAMOS responded in the negative and told PLAINTIFF to leave.

152.    PLAINTIFF responded by asking why he had to leave since he was 200 or 300 feet away on the other side of the street. DEPUTY RAMOS responded that he would arrest PLAINTIFF for obstruction if PLAINTIFF did not leave.

153.    PLAINTIFF shouted the question how he could obstruct justice when he was 200 or 300 feet away. PLAINTIFF then proceeded to walk to his vehicle.

154.    At that point, PLAINTIFF began to video record the incident with the cellphone in his left hand, while his right hand was in his jacket pocket. (It was a cool January morning.) At the same time, DEPUTY RAMOS started walking across the street towards PLAINTIFF and started to scream at PLAINTIFF stating he was going to jail for obstruction. As DEPUTY RAMOS got close to PLAINTIFF, PLAINTIFF again asked how he was obstructing if he was walking towards his vehicle. RAMOS instructed PLAINTIFF to stop videotaping. RAMOS yelled at PLAINTIFF that he is obstructing justice. And that he was going to arrest him.   There was no probable cause to detain or arrest PLAINTIFF at this point.

155.    RAMOS grabbed PLAINTIFF'S cell phone and threw it on the ground.

156.    DEPUTY BALTIERRA was now on the scene. RAMOS grabbed PLAINTIFF and placed him in a headlock while BALTIERRA tackled him and slammed his face on the ground. Deputies J. Garcia and S. Evans were also on scene. Deputies Garcia, Evans, RAMOS and BALTIERRA all jumped on top of PLAINTIFF.

157.    PLAINTIFF was on the ground as the Deputies all piled upon him.

158.    RAMOS kicked PLAINTIFF in the face, back, and torso. RAMOS then used his Retractable Collapsible Baton (RCB) to hit PLAINTIFF on the back, neck and jaw. DEPUTY RAMOS then shoved the RCB into PLAINTIFF'S jawbone causing excruciating pain and causing permanent damage to his jaw. While PLAINTIFF was on the ground, DEPUTIES RAMOS, BALTIERRA and DOES 1 through 5 proceed to kick PLAINTIFF in the head and neck area.

159.    BALTIERRA kicked and kneed PLAINTIFF in the left lower back area.

160.    All DEPUTIES were yelling at PLAINTIFF saying he was resisting arrest.

161.    The DEPUTIES yelled for PLAINTIFF to remove his right hand from the jacket, because the hand was still in the pocket after PLAINTIFF was forced to the ground.  PLAINTIFF was unable to move his right arm because DEPUTY RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 had a firm grip on PLAINTIFF'S right arm and were piled on top of him.

162.    PLAINTIFF asked the DEPUTIES to loosen their grip so that he could remove his right hand from his jacket pocket.

163.    The DEPUTIES loosened their grip and PLAINTIFF attempted to remove his right hand from his jacket pocket.

164.    At that point, DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 kicked and punched PLAINTIFF and yelled that PLAINTIFF was resisting arrest because he was trying to remove his right hand from his jacket pocket as the DEPUTIES instructed.

165.    PLAINTIFF suffered injuries to his head, face, neck, shoulder, arm, and knee.

166.    BALTIERRA escorted PLAINTIFF to his patrol car.  BALTIERRA smashed PLAINTIFF'S body against the patrol car door while placing him in the back seat of his car.

167.    PLAINTIFF was transported to High Desert Detention Center and booked for resisting arrest.

168.    PLAINTIFF was held in custody for two days before being arraigned on January 24, 2018.

169.    DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 gave false testimony at PLAINTIFF'S preliminary hearing, causing PLAINTIFF to be held on $25,000 bail.

170.    On the 4th day of trial, February 26, 2018, the court granted PLAINTIFF'S *Penal Code* 1118.1 motion, at which time all charges against PLAINTIFF were dismissed.

171.    DEPUTY RAMOS violated PLAINTIFF'S First Amendment rights by directing him to cease taking video and taking photographs of matters and events exposed to public view in outdoor areas

172.    As enforced, DEPUTY RAMOS the SBSD Policy regarding photography unconstitutionally prevents PLAINTIFF from freely exercising his First Amendment rights to photograph and record matters and events exposed to public view from exterior or outdoor areas. PLAINTIFF'S case is not unique. SBSD officers and their agents frequently deter or prevent individuals

from documenting potential misconduct by SBSD Deputies and other matters of public interest, and destroy photo or video evidence of the same.

173.   Both the public sidewalk where PLAINTIFF was standing and the surrounding areas are public forums open to speech and expressive activity by tradition and past usage.

174.   While taking these photographs, PLAINTIFF was not engaged in any form of commercial speech or activity. PLAINTIFF took these photographs for political and/or other non-commercial purposes.

175.   Throughout this encounter, DEPUTIES RAMOS, BALTIERRA and other SBSD DOE DEPUTIES spoke to PLAINTIFF in an aggressive and threatening manner, despite the fact that PLAINTIFF at no point posed a threat to the safety of the officers and at no point actively resisted arrest.

176.   Furthermore, PLAINTIFF committed no crime and took no actions giving rise to a reasonable suspicion or probable cause that he had committed or was about to commit a crime under any law that could constitutionally have been applied to him. To the extent PLAINTIFF may have violated any law making his photography illegal, that law is unconstitutional as applied to him.

177.   At all relevant times, there was no threat of violence by PLAINTIFF and there was no threat of property destruction by PLAINTIFF.

178.   RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 used unreasonable force to arrest PLAINTIFF.

179.   PLAINTIFF did not consent to DEFENDANTS' use of force.

180.   PLAINTIFF suffered injuries to his head, face, neck, shoulder, arm, and knee.

181.   The unreasonable use of force of RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 was a substantial factor in causing PLAINTIFF'S injuries.

182.   DEFENDANTS' conduct was malicious, fraudulent, and oppressive and was done with a willful, wanton, and conscious disregard for PLAINTIFF'S rights under the United States and California constitutions.

183.   In arresting PLAINTIFF with an unreasonable use of force, DEFENDANTS DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 acted within the scope of their employment at the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT.

184.   Public employees such as DEFENDANTS DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 are liable for injuries caused by their acts or omissions to the same extent as a private person.  See Government Code § 820(a).

185.   The COUNTY and SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT are vicariously liable for injuries caused by the acts or omissions of DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 within the scope of their employment.  See Government Code § 815.2(a).

**EIGHTH CAUSE OF ACTION**

**FALSE ARREST/FALSE IMPRISONMENT**

**(AGAINST ALL DEFENDANTS)**

186.   The allegations contained in all antecedent and subsequent paragraphs are hereby incorporated by reference.

187.   At approximately 8:00 a.m. on January 22, 2018, DEFENDANTS DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 arrested PLAINTIFF without a warrant and without probable cause.

188.   DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 all encouraged, assisted, and participated in PLAINTIFF'S unlawful arrest.

189.   DEFENDANTS handcuffed and transported PLAINTIFF to the San Bernardino Central Detention Center where he was incarcerated for an appreciable period of time without his consent.

190.   DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1through 5 made false statements against PLAINTIFF causing him to remain in jail and submit to a trial.

191.   The conduct of DEPUTY RAMOS and DEPUTIES DOES 1 through 5 was without lawful privilege.

192.   As a proximate result of his false arrest and imprisonment, PLAINTIFF sustained substantial damages.

193.   The conduct of DEFENDANTS DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 was a substantial factor in causing PLAINTIFF'S damages.

194.   DEFENDANTS' conduct was malicious, fraudulent, and oppressive and was done with a willful, wanton, and conscious disregard for PLAINTIFF'S  rights under the United States and California constitutions.

195.   In arresting and imprisoning PLAINTIFF without warrant or probable cause, DEFENDANTS' DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 acted within the scope of their employment at the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT.

196.   Public employees such as DEFENDANTS DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 are liable for injuries caused by their acts or omissions to the same extent as a private person.  See Government Code § 820(a).

197.   The COUNTY and SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT are vicariously liable for injuries caused by the acts or omissions of DEPUTIES RAMOS, BALTIERRA and DEPUTIES DOES 1 through 5 within the scope of their employment.  See Government Code § 815.2(a).

## **PRAYER FOR RELIEF**

198.   As a direct and proximate result of the aforesaid acts, practices, policies and decisions of DEFENDANTS, PLAINTIFF has suffered great mental and physical pain, physical injury, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused PLAINTIFF to sustain damages in a sum bot be determined at trail.

199.   All DEFENDANTS acted without authorization of law, and, separately and in concert, the aforementioned acts of the DEFENDANTS and each of them, was willful, wanton, malicious and oppressive, with reckless disregard or with deliberated indifference with the intent to deprive PLAINTIFF of his rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling PLAINTIFF to exemplary and punitive damages in an amount to be proven at the trial of this matter.

200.   By reason of the above-described acts and omissions of DEFENDANTS, PLAINTIFF was required to retain an attorney to prosecute the within action, and to render legal assistance to PLAINTIFF that he might vindicate the loss and impairment of his rights, and by reason thereof,

1    PLAINTIFF requests payment by DEFENDANTS of a responsible sum for attorneys' fees pursuant to
2    42 U.S.C. § 1988.

3         201.    Wherefore, PLAINTIFF prays for judgment against DEFENDANTS and each of them,
4    jointly and severally as described in the Causes of Action set forth above as follows:

5         202.    For general and compensatory damages according to proof;

6         203.    For special damages according to proof;

7         204.    For exemplary and punitive damages against individual DEFENDANT DEPUTIES in an
8    amount according to proof;

9         205.    In addition to actual damages, statutory damages as allowed by law, including statutory
10   and treble damages under California Civil Code §§ 52 and 52.1;

11        206.    Attorneys' fees and costs under 42 U.S.C. § 1988; California Civil Code §§ 52(b)(3),
12   52.1(h); California Code of Civil Procedure § 1021.5, and whatever other statute or law may be
13   applicable;

14        207.    For costs of suit pursuant to Fed.R.Civ.P. 54(d), 28 U.S.C. § 1920 and Cal. Civ. Code §
15   1032;

16        208.    For any other relief as this Court deems just and proper.

17

18

19                                                    SKAPIK LAW GROUP
                                                      SOUTHERN CALIFORNIA
20                                                    LAWYERS GROUP, PC

21

22

23   Dated: November 29, 2018              By:   _____
24                                                Geralyn L. Skapik
                                                  Attorneys for PLAINTIFF
25                                                MARLON JOHNSON

26

27

28

## **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands trial by jury.

SKAPIK LAW GROUP
SOUTHERN CALIFORNIA
LAWYERS GROUP, PC

Dated: November 29, 2018                    By: _____
                                            Geralyn L. Skapik
                                            Attorneys for PLAINTIFF
                                            MARLON JOHNSON

-29-
COMPLAINT